**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
NORTHERN DIVISION**

JOHNNIE WHITE,                    :

    Plaintiff,                :

vs.                                CA 05-0243-BH-C

                                  :

JO ANNE B. BARNHART,
Commissioner of Social Security, :

    Defendant.

**<u>REPORT AND RECOMMENDATION</u>**

Plaintiff brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking judicial review of a final decision of the Commissioner of Social Security denying his claims for disability insurance benefits and supplemental security income. This action is before the Magistrate Judge for entry of a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). Upon consideration of the administrative record, plaintiff's proposed report and recommendation, and the Commissioner's proposed report and recommendation,[1] it is determined that the decision to deny benefits should be

---

[1] This cause was scheduled to come on for oral argument before the undersigned on January 3, 2006 in Selma, Alabama (Doc. 15); however, by order dated December 22, 2005, the Court *sua sponte* canceled oral argument and informed the parties that the case would be decided based upon the administrative record and proposed report and recommendations previously filed by the parties (Doc. 19).

affirmed.

Plaintiff alleges disability due to insulin-dependent diabetes mellitus, Type II, hypertension, borderline intellectual functioning, sleep apnea, gouty arthritis, and morbid obesity. The Administrative Law Judge (ALJ) made the following relevant findings:

> 3. The claimant has "severe" impairments, including borderline intellectual functioning, diabetes mellitus, hypertension and obesity.
>
> 4. The claimant's impairments, considered individually and in combination, do not meet or equal in severity any impairment set forth at 20 C.F.R. Part 404, Subpart P, Appendix 1.
>
> 5. The claimant's allegations of pain and functional limitations are not credible.
>
> 6. The claimant retains the residual functional capacity to occasionally lift and/or carry up to 50 pounds; frequently lift and/or carry up to 25 pounds; stand and/or walk for 6 hours out of 8 hours; sit for 6 hours out of 8 hours; push and/or pull with hand and/or foot controls, limited to only occasionally push and/or pull with hand and/or foot controls, limited to only occasionally push and/or pull with right leg; never climb ladders, ropes or scaffolds; frequently climb ramps or stairs; frequently balance, stoop, kneel, or crouch; occasionally crawl; no manipulative limitations; no visual limitations; no communicative limitations; unlimited exposure to extreme cold, extreme heat, wetness, humidity, noise, vibration, fumes, odors, dusts and gases and avoid all exposure to hazardous unprotected heights. I find the claimant has the following non-exertional limitations: I find he is not significantly limited in the following: the ability to remember locations and work-like procedures; ability to understand and remember very short and simple

>instructions; ability to carry out very short and simple instructions; the ability to perform activities within a schedule, maintain regular attendance and be punctual within customary tolerances; ability to sustain an ordinary routine without special supervision; ability to work in coordination with or proximity to others without being distracted by them; ability to make simple work-related decisions; ability to interact appropriately with the general public; ability to ask simple questions or request assistance; ability to accept instructions and respond appropriately to criticism from supervisors; ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes; ability to maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness; ability to respond appropriately to changes in the work setting; ability to be aware of normal hazards and take appropriate precautions; ability to travel in unfamiliar places or use public transportation; ability to set realistic goals or make plans independently of others. I find he is moderately limited in the following: his ability to understand and remember detailed instructions; ability to carry out detailed instructions; and ability to maintain attention and concentration for extended periods. I find he is able to follow simple work routines and sustain attention to routine tasks for extended periods; able to relate well to others and adapt to normal changes.
>
>7. The claimant can perform past relevant work.
>
>8. The claimant is not disabled within the meaning of the Social Security Act.

(Tr. 25-26) The Appeals Council affirmed the ALJ's decision (Tr. 5-7) and thus, the hearing decision became the final decision of the Commissioner of Social Security.

## **DISCUSSION**

In all Social Security cases, the claimant bears the burden of proving that he is unable to perform his previous work. *Jones v. Bowen*, 810 F.2d 1001 (11th Cir. 1986). In evaluating whether the claimant has met this burden, the examiner must consider the following four factors: (1) objective medical facts and clinical findings; (2) diagnoses of examining physicians; (3) evidence of pain; and (4) the claimant's age, education and work history. *Id*. at 1005. Once the claimant meets this burden it becomes the Commissioner's burden to prove that the claimant is capable, given his age, education and work history, of engaging in another kind of substantial gainful employment which exists in the national economy. *Sryock v. Heckler*, 764 F.2d 834, 836 (11th Cir. 1985).

The task for the Court is to determine whether the Commissioner's decision to deny claimant benefits, on the basis that he can perform his past relevant work as a van driver and delivery truck helper, is supported by substantial evidence. Substantial evidence is defined as more than a scintilla and means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971). "In determining whether substantial evidence exists, we must view the record as a whole, taking into account evidence favorable as well as unfavorable to the [Commissioner's] decision."

*Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).[2]

Although the claimant bears the burden of demonstrating the inability to return to his past relevant work, the Commissioner of Social Security has an obligation to develop a full and fair record. *Schnorr v. Bowen*, 816 F.2d 578, 581 (11th Cir. 1987) (citations omitted). Social Security Ruling 82-61 recognizes three possible tests for determining whether or not a claimant retains the capacity to perform her past relevant work. They are as follows:

> 1. Whether the claimant retains the capacity to perform a past relevant job based on a broad generic, occupational classification of that job, e.g., "delivery job," "packaging job," etc.[3]
>
> 2. Whether the claimant retains the capacity to perform the particular functional demands and job duties peculiar to an individual job as he or she actually performed it.
>
> 3. Whether the claimant retains the capacity to perform the functional demands and job duties of the job as ordinarily required by employers throughout the national economy.[4]

---

[2] This Court's review of the Commissioner's application of legal principles, however, is plenary. *Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

[3] As recognized in the ruling, use of this test is likely to be "fallacious and insupportable" because "[w]hile 'delivery jobs,' 'packaging jobs,' etc., may have a common characteristic, they often involve quite different functional demands and duties requiring varying abilities and job knowledge."

[4] The Dictionary of Occupational Titles' descriptions can be relied upon to define the job as it is usually performed in the national economy.

Under § 404.1520(e) of the Commissioner's regulations, a claimant will be found to be "not disabled" when it is determined that he retains the residual functional capacity to perform the actual functional demands and job duties of a particular past relevant job or the functional demands and job duties of the occupation as generally required by employers throughout the national economy. SSR 82-61.

In this case, the ALJ has relied upon test three above to determine that the claimant can perform his past relevant work as a van driver and delivery truck helper. (Tr. 24-25 ("At the hearing, I asked the vocational expert to identify work performed by the claimant in the past fifteen years, indicating the title of the job, and the skill and exertional level of each job. The vocational expert testified that the claimant had worked as a: van driver (medium/semiskilled); truck/helper (medium/unskilled) and general (city) laborer (heavy/unskilled). 20 C.F.R. §§ 404.1520(e) & 416.920(e) provide that an individual will be found 'not disabled' when it is determined that a claimant retains the residual functional capacity to perform past relevant work. This includes performance of the actual functional demands and duties of a particular past relevant job or the functional demands and duties of the occupation as generally required by employers throughout the national

economy. The vocational expert was queried as to whether the above-described residual functional capacity would preclude the performance of any of the identified jobs. The vocational expert testified that the residual functional capacity would not preclude the performance of work as a van driver and truck/helper. Upon consideration of the record, including the vocational expert's testimony, I find that the claimant retains the residual functional capacity to perform his past relevant work."))

Section 404.1520(e) of the Commissioner's regulations requires a review and consideration of a plaintiff's residual functional capacity and the physical and mental demands of the past work before a determination can be made that the plaintiff can perform his past relevant work.  Social Security Ruling 82-62 provides that evaluation under § 404.1520(e) "requires careful consideration of the interaction of the limiting effects of the person's impairment(s) and the physical and mental demands of . . . h[is]  PRW to determine whether the individual can still do that work."  *See also Lucas v. Sullivan*, 918 F.2d 1567, 1574 n.3 (11th Cir. 1990) (to support a conclusion that a claimant "is able to return to her past work, the ALJ must consider all the duties of that work and evaluate her ability to perform them in spite of her impairments").

> The RFC to meet the physical and mental demands of jobs a claimant has performed in the past (either the specific job a claimant performed or the same kind of work as it is customarily performed throughout the economy) is generally a sufficient basis for a finding of "not disabled."
>
> . . .
>
> The decision as to whether the claimant retains the functional capacity to perform past work which has current relevance has far-reaching implications and must be developed and explained fully in the disability decision. Since this is an important and, in some instances, a controlling issue, every effort must be made to secure evidence that resolves the issue as clearly and explicitly as circumstances permit.
>
> Sufficient documentation will be obtained to support the decision. Any case requiring consideration of PRW will contain enough information on past work to permit a decision as to the individual's ability to return to such past work (or to do other work). Adequate documentation of past work includes factual information about those work demands which have a bearing on the medically established limitations. Detailed information about strength, endurance, manipulative ability, mental demands and other job requirements must be obtained as appropriate. This information will be derived from a detailed description of the work obtained from the claimant, employer, or other informed source. Information concerning job titles, dates work was performed, rate of compensation, tools and machines used, knowledge required, the extent of supervision and independent judgment required, and a description of tasks and responsibilities will permit a judgment as to the skill level and the current relevance of the individual's work experience.

SSR 82-62. In finding that a claimant has the capacity to perform a past relevant job, the decision of the Commissioner must contain among the

findings, a finding of fact as to the claimant's residual functional capacity, a finding of fact as to the physical and mental demands of the past job/occupation, and a finding of fact that the claimant's residual functional capacity would permit a return to the past job or occupation. *Id.*

Plaintiff contends that the ALJ made the following errors: (1) he erred in failing to accord proper weight to the opinion of the treating physician Dr. Charles M. Soppet; (2) he erred in failing to consider the effects of plaintiff's morbid obesity on his ability to work; (3) he improperly assessed plaintiff's credibility; and (4) he failed to resolve a conflict between the vocational expert's testimony and the Dictionary of Occupational Titles.

**A. <u>Weight to be Accorded a Treating Physician's Opinion</u>.** In the Eleventh Circuit "the testimony of a treating physician must be given substantial or considerable weight unless 'good cause' is shown to the contrary." *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997).

> The ALJ must clearly articulate the reasons for giving less weight to the opinion of the treating physician, and the failure to do so is reversible error. We have found "good cause" to exist where the doctor's opinion was not bolstered by the evidence, or where the evidence supported a contrary finding. We have also found good cause where the doctors' opinions were conclusory or inconsistent with their own medical records.

*Id.* (internal citations omitted). In this case, the plaintiff contends that the ALJ

9

failed to even consider, much less accord appropriate weight, to the February 17, 2002 Disability Questionnaire Application completed by Dr. Soppet, same revealing the following limitations: the ability to walk only 2 blocks, stand for 30 minutes and sit for 1 hour; the ability to lift 5 pounds; the ability to climb 4 steps; the ability to bend just a "little;" the ability to sleep for 5 to 6 hours; and the ability to drive for 30 minutes. (Tr. 198) Moreover, the questionnaire reveals back pain of 10 on a scale of 1 to 10, leg pain of 7 on a scale of 1 to 10, and foot pain of 8 on a scale of 1 to 10. (Tr. 199)

It is true that the ALJ never directly mentioned this Disability Questionnaire but the failure to do so and to state the weight he was according same is clear harmless error since, as recognized by the defendant in her proposed report and recommendation, this document reflects not Dr. Soppet's objective opinion regarding White's ability to lift, stand, walk and sit, etc. but, instead, reflects plaintiff's own subjective opinion about his ability to perform the foregoing physical activities as well as his opinion of the intensity of his pain. (Tr. 198-199) It is clear to the Court that Dr. Soppet and personnel in his office simply assisted plaintiff in completing the questionnaire with plaintiff's own observations regarding his physical abilities and pain. (Tr. 198-200) Because the questionnaire does not reflect any of Dr. Soppet's personal

objective findings or opinions regarding plaintiff's pain and ability to perform physical activities there was no reason for the ALJ to analyze this document in the context of the *Lewis v. Callahan* standard set forth above. The ALJ committed no error in this regard.

### B. Effects of Plaintiff's Morbid Obesity on his Ability to Work.

Plaintiff contends that the ALJ failed to properly evaluate his morbid obesity as required by SSR 02-01p. Specifically, it is plaintiff's argument that the ALJ considered only the physical limitations caused by his obesity and failed to consider the mental limitations, such as decreased concentration, caused by this impairment. The undersigned finds, however, that the record reflects that the ALJ properly evaluated plaintiff's morbid obesity as required by SSR 02-01p.

In his opinion, the ALJ specifically noted his obligation to evaluate plaintiff's obesity under SSR 02-01p and performed such analysis in the following manner:

> On September 12, 2002, SSA published SSR 02-01p. . . . I have considered the claimant's obesity, standing along (sic), and in combination with other impairments. I find that the medical records show that the claimant's weight was noted to be from 350 to 400 pounds when he was evaluated by Dr. Golomb in August of 2002. However, Dr. Golomb reported that the claimant was reasonable (sic) agile for his size, his back flexion was 100 degrees, right and left straight-leg raising was 90

11

> degrees, he had full range of motion of his head, neck[,] shoulder joints and all other peripheral joints including his knee joints. He walked with a normal gait and although the claimant used a cane, Dr. Golomb reported that he walked well without his cane. The claimant had no motor or sensory abnormalities, and could walk on his heels and toes and squat fully and arise without any support. There was no motor loss. X-rays of the back showed the disc spaces were well-preserved and there was normal alignment and configuration of the vertebral bodies. Dr. Golomb opined the claimant could do work-activities with only very minor limitations due to his size. I find no physician has limited the claimant from work activity. I find that the claimant's obesity, either by itself, or in combination with any other physical impairment, would not be so severe that all work activity is eliminated.

(Tr. 22)  While it is true that the foregoing analysis does not reflect consideration by the ALJ of any possible mental limitations caused by plaintiff's obesity and plaintiff's counsel points to the claimant's testimony regarding decreased concentration (Tr. 287), the problem with this testimony is that it does not specifically link the decrease in ability to concentrate with the obesity, as opposed to another of plaintiff's impairments. Moreover, in posing his hypothetical question to the vocational expert the ALJ specifically called the VE's attention to Exhibit 8-F (Tr. 306), which recognized that plaintiff would be moderately limited in his ability to maintain attention and concentration for extended periods (Tr. 232). Accordingly, within the context of the record and case as a whole, the ALJ took into consideration a limitation

on plaintiff's ability to concentrate and thereby properly considered all mental limitations caused by plaintiff's impairments. His failure to specifically address plaintiff's decreased ability to focus within the context of his discussion of SSR 02-01p was not error both because such limitation was included as part of his hypothetical to the vocational expert and because plaintiff never linked his concentration problem to his obesity as opposed to one of his other impairments.

  **C.** **The ALJ's Assessment of Plaintiff's Credibility.**  Plaintiff contends that the ALJ merely recited the appropriate rulings, regulations and case law relevant to this circuit's three-part pain standard but "failed to analyze and apply those standards to Mr. White's case[,]" specifically, with respect to plaintiff's subjective complaints of drowsiness, fatigue and shortness of breath. (Doc. 12, at 10)

  The Eleventh Circuit has established a three-part pain standard that applies when a claimant attempts to establish his disability through testimony of pain. "The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can reasonably be

expected to give rise to the alleged pain." *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991) (citation omitted). "A claimant may establish that h[is] pain is disabling through objective medical evidence that an underlying medical condition exists that could reasonably be expected to produce the pain. 20 C.F.R. § 404.1529 provides that once such an impairment is established, all evidence about the intensity, persistence, and functionally limiting effects of pain or other symptoms must be considered in addition to the medical signs and laboratory findings in deciding the issue of disability." *Foote v. Chater*, 67 F.3d 1553, 1562 (11th Cir. 1995).

The ALJ performed the following evaluation of plaintiff's complaints of severe disabling pain and other symptoms: "I find that the claimant's testimony of disabling pain and functional restrictions is disproportionate to the objective medical evidence. The record does not contain objective signs and findings that could reasonably be expected to produce the degree and intensity of pain and limitations alleged. There are no diagnostic studies to show abnormalities that could be expected to produce such severe symptoms. The physical findings in the record do not establish the existence of neurological deficits, significant weight loss, muscle atrophy, or other observable signs often indicative of protracted pain of the intensity, frequency,

and severity alleged." (Tr. 23)

Admittedly, the ALJ conducted but a short analysis of plaintiff's subjective complaints and concentrated almost exclusively on White's allegations of severe disabling pain.[5] However, inasmuch as the ALJ did include within his analysis reference to other restrictions testified to by White, the undersigned finds such analysis (rejecting those other limitations) sufficient consideration of plaintiff's subjective complaints of drowsiness, fatigue and shortness of breath since the evidence of record supports the ALJ's rejection of such restrictions. The undersigned has copiously reviewed the administrative record in this case and finds no complaints by White to his primary physician, Dr. Soppet, about drowsiness, fatigue or shortness of breath (Tr. 168-197 & 237-241) and, consequently, no concerns expressed by the treating physician about these alleged limitations, *see Swindle v. Sullivan*, 914 F.2d 222, 226 (11th Cir. 1990) (where no concerns about side effects of medication are noted by treating or examining physicians, an ALJ's determination that side effects from medication did not present a significant

---

[5] To the extent it is necessary, the undersigned finds that the ALJ's explicit determination that plaintiff does not suffer from severe disabling pain is supported by substantial evidence. (*See* Tr. 168-241)

problem is supported by substantial evidence).[6] Accordingly, the undersigned finds the ALJ's implicit determination that these alleged symptoms (drowsiness, fatigue, and shortness of breath) did not present significant problems supported by substantial evidence.

**D. ALJ Erred in Failing to Resolve a Conflict Between the Vocational Expert's Testimony Concerning Classification of Plaintiff's Past Work and the Classification of the Jobs as Described in the Dictionary of Occupational Titles.** The VE in this case classified plaintiff's past work as a van driver as medium and unskilled and his past work as a delivery truck helper as medium and unskilled (Tr. 305); he further testified that his testimony in this regard was consistent with the DOT (Tr. 306). It is plaintiff's contention that the VE's testimony regarding his past work conflicts with the DOT inasmuch as that source describes van driver as "very heavy work" and delivery truck helper as "heavy" work. (Doc. 12, at 11) Plaintiff contends, further, that pursuant to SSR 00-4p the ALJ was required to resolve

---

[6] In fact, the only examining medical doctor who documented plaintiff's complaints about any of these alleged limitations, Dr. Philip Golomb (Tr. 206 ("He was asked to describe his present problems and he replied, 'This is the third time I've applied for disability. . . . I used to drive long distances with a van, but I can't drive long distances any more because the medicines I take make me drowsy.'")), ultimately opined, following his physical examination of the claimant, his belief that "Mr. White could do work-related activities with very only minor limitations, and those would be due to his very large size." (Tr. 208)

this conflict and his failure to do so amounts to reversible error.

In response to plaintiff's argument in this regard, the defendant has cited this Court to two other sections of the DOT, namely #913.663-018, which classifies the work of van driver as requiring medium exertion (Doc. 17, Attachment, at 1 ("Drives minibus, van, or lightweight truck to transport clients, trainees, or company personnel: Drives vehicle from individual or central loading area to social services or rehabilitation center, training location, job site, or other destination according to assigned schedule. May assist disabled passengers into and out of vehicle. . . .") (emphasis omitted)), and #292.667-010, which classifies driver helper on a sales route as requiring a medium amount of exertion (*id*., at 2 ("Aids DRIVER, SALES ROUTE (retail trade; wholesale tr.) in providing sales, services, or deliveries of goods to customers over an established route, performing any combination of the following: Loads and unloads truck at beginning and end of trip. Carries merchandise from truck to customer's home or store. Collects c.o.d. payments or obtains receipts. May drive to relieve driver. May solicit new business.") (emphasis omitted)). The DOT descriptions/classifications cited by the defendant are more consistent with plaintiff's description of his past work (Tr. 98 (van driver job required 4 hours of sitting but no other exertional

requirements); 100-101 (truck driver helper work required plaintiff to lift and carry milk weighing up to 25 pounds to and from truck into stores, walking and standing for 4 hours, and sitting for 2 hours); 288 (van driver work required him to drive from town to town); 289 (truck driver helper work required plaintiff to unload crates of milk from truck, place them on a two-wheeler and deliver them inside stores), than are the DOT classifications cited by plaintiff.[7] Accordingly, the undersigned finds no conflict between the VE's testimony and the DOT classifications applicable in this case which needed to be resolved by the ALJ. The ALJ committed no error in this regard.

The evidence of record in this case completely supports the hypothetical question posed by the ALJ to the VE (*compare* Tr. 168-262 *with* Tr. 306) and based upon that hypothetical the VE testified that plaintiff could perform his past relevant work as a van/coach driver and delivery truck helper (Tr. 306-308). The ALJ appropriately relied upon the VE's testimony, along with the other evidence of record, to find that White had not satisfied his burden of

---

[7]   DOT # 905.663-018 is the classification for a van driver who drives a furniture van and loads and unloads the furniture slated for delivery. It comes as no surprise that such work is classified as heavy but it is also no surprise that such work is totally inconsistent with the work described by White. Moreover, DOT # 905.687-010 is the classification for a truck driver helper for a "heavy" truck driver in any industry and there is simply nothing about plaintiff's past work as a truck driver helper delivering milk to stores which suggests that such work required heavy exertion.

proving that he is unable to perform his previous work. *Jones, supra*. Therefore, the Commissioner's decision denying claimant benefits should be affirmed.

## **CONCLUSION**

The Magistrate Judge recommends that the Commissioner's decision denying plaintiff benefits be affirmed.

The attached sheet contains important information regarding objections to the report and recommendation of the Magistrate Judge.

**DONE** this the 6th day of January, 2006.

s/WILLIAM E. CASSADY
**UNITED STATES MAGISTRATE JUDGE**

### MAGISTRATE JUDGE'S EXPLANATION OF PROCEDURAL RIGHTS AND RESPONSIBILITIES FOLLOWING RECOMMENDATION, AND **FINDINGS CONCERNING NEED FOR TRANSCRIPT**

l. *Objection*. Any party who objects to this recommendation or anything in it must, within ten days of the date of service of this document, file specific written objections with the Clerk of this court. Failure to do so will bar a *de novo* determination by the district judge of anything in the recommendation and will bar an attack, on appeal, of the factual findings of the Magistrate Judge. *See* 28 U.S.C. § 636(b)(1)(C); *Lewis v. Smith*, 855 F.2d 736, 738 (11th Cir. 1988); *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. Unit B, 1982)(*en banc*). The procedure for challenging the findings and recommendations of the Magistrate Judge is set out in more detail in SD ALA LR 72.4 (June 1, 1997), which provides that:

> A party may object to a recommendation entered by a magistrate judge in a dispositive matter, that is, a matter excepted by 28 U.S.C. § 636(b)(1)(A), by filing a 'Statement of Objection to Magistrate Judge's Recommendation' within ten days after being served with a copy of the recommendation, unless a different time is established by order. The statement of objection shall specify those portions of the recommendation to which objection is made and the basis for the objection. The objecting party shall submit to the district judge, at the time of filing the objection, a brief setting forth the party's arguments that the magistrate judge's recommendation should be reviewed *de novo* and a different disposition made. It is insufficient to submit only a copy of the original brief submitted to the magistrate judge, although a copy of the original brief may be submitted or referred to and incorporated into the brief in support of the objection. Failure to submit a brief in support of the objection may be deemed an abandonment of the objection.

A magistrate judge's recommendation cannot be appealed to a Court of Appeals; only the district judge's order or judgment can be appealed.

2. *Transcript (applicable Where Proceedings Tape Recorded)*. Pursuant to 28 U.S.C. § 1915 and FED.R.CIV.P. 72(b), the Magistrate Judge finds that the tapes and original records in this case are adequate for purposes of review. Any party planning to object to this recommendation, but unable to pay the fee for a transcript, is advised that a judicial determination that transcription is necessary is required before the United States will pay the cost of the transcript.

                                           s/WILLIAM E. CASSADY
                                           UNITED STATES MAGISTRATE JUDGE